## Huber v. Grove

*Louis S. May*, for petitioner.
*Charles W. Eaby*, contra.

WISSLER, J., March 28, 1947.—Arthur F. Huber, plaintiff, brought an action in trespass against defendant, Arthur Grove, to recover damages for injuries alleged to have been caused by the negligence of defendant. At the trial the court entered a judgment of nonsuit, which plaintiff has moved to strike off.

There being no evidence of contributory negligence on the part of plaintiff, but one question is involved: Does the evidence establish any negligence on the part of defendant?

According to plaintiff's testimony, the following facts are established: Plaintiff on July 11, 1945, was the owner of a 17 foot Chris-Craft runabout, and on that day it was moored about 150 feet west of the bank of the Susquehanna River, and 500 to 600 feet below the mouth of Pequea Creek, where said creek enters said river; that defendant had a float 12 or 14 feet square, built of lumber on steel drums, moored approximately 150 feet in from the east shore, and about 150 to 200 feet above plaintiff's boat upstream; that defendant's float and boat, or boats, attached thereto were last seen between five and six o'clock on the evening of July 11, 1945, and were next seen about seven o'clock the next morning "wrapped around" (as

the witness stated) plaintiff's boat. No one witnessed this occurrence, although it was testified by the witness, who observed the float both in the evening and in the morning, that he retired between 11 and 12 o'clock, and that he did not observe anything unusual about the weather that evening, and that in the morning the weather was normal.

There was no evidence as to how defendant's float became unfastened during the night. There was testimony that up until 11 or 12 o'clock the weather was normal, as well as the next morning at seven o'clock, but there was no positive testimony that there was no storm between midnight and seven o'clock. There was no proof of negligence on the part of defendant, but it is contended on the part of plaintiff that negligence under the circumstances is presumed, and that the burden shifted to defendant to free himself of negligence.

In Pennsylvania the rule of res ipsa loquitur will be applied only in cases where there is a contractual relationship between plaintiff and defendant, or where defendant is a common carrier and plaintiff a passenger, or where defendant deals in a commodity which is dangerous if not carefully handled, and in all other cases where the circumstances are under the exclusive control or management of defendant: Stearns v. Ontario Spinning Company, 184 Pa. 519 (1898); Wright et al. v. Straessley, 321 Pa. 1 (1936).

It is true, as contended by plaintiff, that while not called by the name of res ipsa loquitur, the same principle of presumption of negligence has been applied in parked automobile cases, as found in Helfrich v. Gurnari (No. 1), 78 Pa. Superior Ct. 449 (1922), and Henderson v. Horner, 287 Pa. 298 (1926).

In the Helfrich case, supra, defendant parked his car in the street and entered a saloon in the City of Wilkes-Barre. He came out three minutes later and

found the car had disappeared. Without anyone in it, it had proceeded some distance and struck plaintiff, pinning her against a telephone pole. There was no evidence as to how the car started. In this case Judge Trexler, at page 451, said:

"The defendant was the owner and had control of the machine. It was his duty, when he parked it, to see that it was in such a condition that it would remain where it was. In the ordinary course of things such accidents do not happen, if the person controlling the car uses proper care. As stated above, only three minutes elapsed between the defendant leaving the car, and his return and finding it gone. It is possible that within this small space of time someone may have started the car, but the probabilities are all against this theory. When anyone leaves a car and within such a short space of time as here stated, the car is found without a driver, some distance away, the jury can, under the circumstances, be permitted to draw the inference that he did not leave the car in the proper condition and unless he produces evidence which is believed by the jury, that explains the accident, the jury has a right to believe he was negligent."

In the Henderson case the car was parked only five minutes. It will be noted that these cases allowing the inference of negligence were based on the shortness of time. In 66 A. L. R. 440, the Helfrich and Henderson cases are cited under the heading, "Length of time elapsing before car starts as element of negligence."

In the instant case the alleged negligent act of defendant occurred during the night, and there is no time fixed after the fastening of the boats to the float until they became unfastened and struck plaintiff's boat; nor is there any evidence of exclusive control, as the boat was moored 150 feet from the east bank of the river, to bring defendant within the exclusive control rule. It is possible that during the night de-

fendant's boat might have become unfastened by someone coming in contact with the float, or due to a storm.

Plaintiff, having failed to show some specific act of negligence, falls within the well established rule, namely, that negligence is not to be presumed from the mere happening of an accident.

After a careful reconsideration of the evidence and examination of the authorities, this court still feels that there was no issue of negligence to be presented to the jury.

And now, March 28, 1947, the rule to strike off the judgment of nonsuit is discharged.